## ADAMS & CASWELL v. SAGE and others.

Where fraud has been committed by misrepresentation and false statements, and the aggrieved party, with knowledge of the facts constituting the fraud, makes a compromise of the matter without suit, or, after suit brought to redress the wrong, he compromises such suit, the compromise should be held valid in law, although the party committing the fraud may reiterate such misrepresentations and false statements and affirm and reaffirm his integrity in the matter, in order to effect the compromise, and the aggrieved party may thereby be induced to make the compromise.

Where a party to whom representations are made has the means at hand of determining their truth or falsehood, and resorts to such means, and after investigation avows his belief that the statements are false, and acts upon such belief by bringing an action to recover money obtained from him by means of the fraudulent representations, he is not entitled to credit when he alleges that upon the reiteration of the truth of the same statements, by the same party, he was induced to enter into an agreement to settle the suit, and was thereby defrauded.

THIS is an appeal by the defendants from a judgment of the Supreme Court in the first district, at a general term, affirming a judgment entered at special term, on the report of Lucius Robinson, referee, in favor of the plaintiffs against all the defendants for $5156.81, damages and costs. The bill was originally filed in the Court of Chancery before the chancellor, in September, 1844, and the case, so far as now material to be stated, is substantially as follows: In July, 1841, the plaintiffs, merchants in Lyons, Wayne county, authorized Hiram G. Hotchkiss to purchase for them in New York one thousand barrels of pork, if it could be bought for $8.25 for prime, and $10.25 for mess, per barrel. At the same time, and on the 12th of July, 1841, they wrote a letter to Suydam, Sage & Co., the defendants, which they sent by Hotchkiss, to the effect that they had authorized Hotchkiss to make for them the purchase of the pork above stated, and if it should be purchased for the price named or less, they would put it into the hands of the defendants for sale, in which case they would draw upon the defendants for the

amount at three or four months, which the defendants would get discounted and remit to them. On the next day, July 13, they wrote to the defendants, by mail, to the same effect. On the 21st of July the defendants answered both letters, giving advice as to the then state of the market, on the receipt of which, July 24, the plaintiffs wrote to the defendants, saying that "if Mr. Hotchkiss has not purchased any [pork] for us, when you receive this you will please say to him that he need not do it." That letter was received by Sage at New York on the morning of the 27th of July. On the 26th of July he had been negotiating with Hotchkiss to sell him the one thousand barrels of pork for the plaintiffs, and offered it at the plaintiffs' prices if Hotchkiss would allow him half the commission. After Sage had received and read the plaintiffs' letter, Hotchkiss called and Sage inquired whether he had determined to accept the offer made on the day before, and Hotchkiss said that he had. The terms of the bargain were then repeated and it was closed, and Sage then handed Hotchkiss the plaintiffs' letter. Hotchkiss was surprised, and asked Sage what he should do or say to the plaintiffs, and then Sage wrote out a memorandum of what he should incorporate in his letter to the plaintiffs on the subject of the purchase. This sale is alleged by the plaintiffs to have been fraudulent, and is so in substance found by the referee before whom the cause was tried, and whose decision is under review. There was a loss of about $4000 on the pork thus purchased, the last of which was sold August 6, 1842. The plaintiffs were informed in July, 1842, of all the facts and circumstances upon which it is alleged the sale was fraudulent. The firm of Suydam, Sage & Co. having retained the amount of these losses out of other funds of the plaintiffs, in their hands, they (after an ineffectual effort to settle) commenced a suit in the Supreme Court against Suydam, Sage & Co. to recover the moneys thus retained, and Suydam, Sage & Co. immediately commenced in the Supreme Court a suit against the plaintiffs to recover

the amount of loss upon the pork.   These suits were put at issue, and afterwards, and in December, 1852, were compromised and settled, and out of that settlement and compromise the present controversy has arisen.   The bill in this cause was filed in September, 1844, to vacate the settlement in 1842, on the ground that it was procured by the fraud of the defendants, and the referee found it fraudulent, and gave judgment in favor of the plaintiffs, on that ground.   In respect to this settlement the referee, after finding the sale of the pork fraudulent, finds that the agreement to settle the two suits in the Supreme Court mentioned in the pleadings, was made upon the representations of Sage (one of the defendants) to John Adams, (one of the plaintiffs;) that the said letter of countermand of July 24, 1841, had been handed to and read by the said Hotchkiss before it had been seen by him, the said Sage; that the said sale of one thousand barrels of pork was really made in good faith from pork which the said Suydam, Sage & Co. had on hand; that there were no fraudulent circumstances attending such sale, and that the loss shown by the account rendered by said Suydam, Sage & Co. referred to in the pleadings, had actually been incurred upon the said one thousand barrels of pork, which representations were untrue, and were known to be so by the said Sage at the time of making them; that the plaintiffs had confidence in such representations, and were thereby induced to enter into said agreement of settlement.   The referee did not find in his report what knowledge the plaintiffs had of the original transaction, at the time of the settlement, but it sufficiently appears, as will be shown hereafter, that at the time of the settlement they had full knowledge of all the material circumstances attending the sale of the pork, and that upon this knowledge they commenced the suit against the defendants, in the Supreme Court; and when the parties got together to settle the litigation growing out of the alleged original fraud, one party asserted the fraud and the other denied it; and finally, to end the controversy,

they agreed to divide the matter in dispute. The plaintiffs now attempt to get rid of that settlement, on the sole ground that the defendants, in the negotiations for a settlement, *did not admit the original fraud, but denied it*, and the bill in this cause was filed to accomplish that purpose, upon the allegation that the plaintiffs were *deceived* by reason of the denial of the defendants that they had committed the original fraud. The defendants excepted to the report of the referee, both in respect to conclusions of fact and law; and the judgment entered thereon was affirmed at a general term in the first district, (Justice SUTHERLAND dissenting,) and the defendants appealed to this court.

*John H. Reynolds*, for the appellants.

*Smith & Cornwell*, for the respondents.

ROSEKRANS, J. The allegations in the complaint which were verified by the plaintiffs, and the evidence introduced by them, show clearly that the plaintiffs had full information and knowledge of all the facts which constituted the fraud of which they complain, in regard to the sale of pork by Suydam, Sage & Co. to the plaintiffs, prior to the commencement of the action brought by the plaintiffs to recover the sums they had advanced on account of such fraudulent sales. It is distinctly averred that the plaintiffs received this information from their own agent, who negotiated the purchase for them, about the 26th day of July, 1842; that *they believed his statement;* that in consequence of it they proceeded to the city of New York and had an interview with Suydam, Sage & Co. in regard to the matter; and that because Suydam, Sage & Co. did not give the plaintiffs any satisfactory explanation, they commenced their suit against Suydam, Sage & Co. in the same month of July or in August, 1842, to recover the moneys advanced on the fraudulent purchase, believing that the sale was a mere pretense,

or, if actually made, that it was made after Suydam, Sage & Co. had received the plaintiffs' letter countermanding their order for the purchase of the pork, and revoking the authority of their agent to make the purchase. It also appears from the plaintiffs' evidence, that within fifteen days after the commencement of such suit, Suydam, Sage & Co., in a letter which they wrote to the plaintiffs, of the date of August 12, 1842, contradicted the statements made to the plaintiffs by Hotchkiss, their agent, in regard to the fraudulent sale, and denounced them as misrepresentations, and proposed an amicable settlement of the suit. And that notwithstanding this the plaintiffs, relying upon the truth of the statements of Hotchkiss, proceeded in the action and noticed it for trial at the circuit in December, 1842. Indeed it appears that as early as May, 1842, the plaintiffs had an interview with Suydam, Sage & Co. at their counting room, in the city of New York, in which the plaintiffs contended that the sale of the pork to Hotchkiss was unfair, and alleged that they did not believe Suydam, Sage & Co. had the pork on hand for sale, and that the accounts rendered by Suydam, Sage & Co. to the plaintiffs, of the sales of the pork by them on the plaintiffs' account, was a sham, and that the sale to Hotchkiss was made and put upon the plaintiffs after Suydam, Sage & Co. had received the plaintiffs' letter countermanding the order for the purchase and revoking the authority of Hotchkiss to make it. In that interview Suydam, Sage & Co. denied the statements of the plaintiffs. Under these circumstances, in December, 1842, the stipulation was made to settle the suit commenced by the plaintiffs against Suydam, Sage & Co., and another suit commenced by Suydam, Sage & Co. against the plaintiffs to recover the balance of their account. This settlement was made upon a retraction by Suydam, Sage & Co. of their denial of the statements made by Hotchkiss to the plaintiffs of the several circumstances constituting the frauds complained of, and upon the affirmation by Suydam, Sage & Co. of the contrary of such statements. The

plaintiffs complain that these representations of Suydam, Sage & Co. were false, that they relied upon such misrepresentations and were deceived by them, and were thereby induced to make the settlement, and on that ground ask to have the settlement set aside.

This action having been commenced in the late Court of Chancery, this court is required, upon appeal, to review the cause upon the facts and the law. (Code, § 460.) Assuming the facts to be as stated, the referee erred in finding as a fact that the plaintiffs had confidence in the representations of Suydam, Sage & Co., and were thereby induced to enter into an agreement for a settlement. Such finding is not only against the weight of evidence, but is against and contrary to evidence. Where a party to whom representations are made has the means at hand of determining their truth or falsehood, and resorts to such means, and after investigation avows his belief that the statements are false, and acts upon such belief by bringing an action to recover money obtained from him by means of the fraudulent representations, he is not entitled to credit when he alleges that upon the reiteration of the truth of the same statements, by the same party, he was induced to enter into an agreement to settle the suit and was thereby defrauded. Such investigation and ascertainment of facts, and belief in the falsity of the representations made, exclude the idea that any reliance could have been placed upon the repetition of the falsehood, and the verdict of a jury or finding of a referee to the contrary should be set aside as unsustained by the evidence. Indeed, upon such evidence, it would be error to submit to a jury the question whether reliance was or was not placed upon the reiterated false representations. Under the circumstances assumed, the law presumes that the party relied, in making the agreement, upon his own investigation, and not upon the representations of the party with whom he is dealing. This conduct, in acting in opposition to the knowledge acquired by inquiry from one who knows the facts, is attrib-

utable, and is set down by the law, to his own indiscretion and recklessness, and not to any fraud or surprise of which, under the circumstances, he has any right to complain. Knowledge that the representations made in relation to the subject of an agreement, as an inducement to entering into it, are false, will deprive the party having such knowledge, of all title to relief in equity.   (1 Story's Eq. Jur. § 202.)   And when a party has been defrauded, and with full knowledge of the fraud settles the matter in relation to which the fraud has been committed, he has no claim to relief at law or in equity on account of such fraud.   This was held by the late Chancellor in the case of *Parsons, adm'r,* v. *Hughes,* (9 Paige, 591.)   In that case the agent of a mercantile firm, to make purchases abroad with the concurrence of his brother, who was a member of the firm, had defrauded his principals by false invoices of goods purchased for them.   The copartnership was subsequently dissolved and mutual releases executed between the partners, which were declared to include a full settlement of accounts between the firm and their said agent. A bill was subsequently filed by the administrator of one member of the firm to set aside this release, upon the allegation that it and the agreement for dissolution were based upon a fair settlement of accounts between the partners, and that the plaintiff, having subsequently discovered the fraud complained of, was not bound by the release, or precluded from calling upon the partner who connived at the frauds of the agent, to account.   To this bill the defendant interposed a plea in bar of the discovery and relief claimed, that before the agreement for a dissolution of the copartnership and a release, all the alleged frauds were well known to the other partners.   And that the articles of dissolution and release were executed for the purpose of adjusting and fully settling and compromising all such matters and frauds.   Upon the argument of the case upon the bill of complaint and plea, the Chancellor decided the plea should be allowed; holding that if the allegations of the plea were true, they

constituted a full and perfect bar to all discovery and relief. The plea was allowed, with liberty to the plaintiff to take issue upon it. In 2 Parsons on Contracts, 270, the rule is laid down in relation to defenses to actions on the ground of false representations, that it must appear that the injured party not only did in fact rely upon the fraudulent statement, *but had a right to rely upon it,* in the full belief of its truth, for otherwise it was his own fault or folly, and he can not ask of the law to relieve him. Many of the cases cited by the author to sustain this rule, hold that if the truth or falsehood of the representations *might* have been tested by ordinary vigilance and attention, it is the party's own folly if he neglect to do so, and he is remediless. I think this case is governed by these principles, and that judgment should have been reversed for error in the referee's finding as to the fact that the plaintiffs had confidence in the reiteration by Suydam, Sage & Co. of their previous false statements, or were thereby induced to make the settlement.

But if this view of the case is not correct, the referee's conclusion of law, that the agreement for settlement was void, was clearly erroneous. This agreement, under the allegations in the complaint and the evidence in the case, should be regarded as a compromise or settlement of a doubtful or disputed claim. No new false statement is pretended to have been made by Suydam, Sage & Co. to induce the plaintiffs to enter into an agreement for a settlement. Only the old falsehoods were repeated, and Suydam, Sage & Co. reaffirmed their honesty and fair dealing in the matters out of which the suit originated. Now it can not be that a settlement effected under the circumstances already stated, comes within the rule which annuls all instruments and agreements procured by fraud. Such an application of the rule would be a virtual prohibition against the compromise of frauds, or of actions for relief on account of frauds, unless the guilty party should make not only full retribution, but also full confession of his guilt. The law favors the compromise of doubtful and disputed

claims, whether they arise *ex contractu* or *ex delicto.* Such compromises narrow the field of discord; they put an end to litigation and strife, and promote peace and good will. They are usually effected by mutual concession and compromise. Neither party is compelled to yield more of his claim or defense than he sees fit or deems necessary to accomplish the settlement. If the subject of compromise is a fraud, the party aggrieved may magnify the enormity of it, and the party accused may assert his innocence. Where fraud has been committed by misrepresentation and false statements, and the aggrieved party, with knowledge of the facts constituting the fraud, make a compromise of the matter without suit, or, after suit brought to redress the wrong, compromises such suit, the compromise should be held valid in law, although the party committing the fraud may reiterate such misrepresentations and false statements and affirm and reaffirm his integrity in the matter in order to effect the compromise, and the aggrieved party may thereby be induced to make the compromise.

This case comes within this rule, and the judgment should be reversed.

SELDEN, J. had been counsel in the cause and did not sit.

DAVIES, J. was for affirmance, and MARVIN, J. was disposed to concur with him.

All the other Judges concurring with ROSEKRANS, J.

Judgment reversed.