ELIZABETH J. GRAHAM, as Executrix of JOHN GRAHAM, Deceased, Appellant, v. LEWIS H. MEYER, Respondent.

*Settlement of an action — when the failure of the defendant to disclose his pecuniary condition will not vitiate it.*

The plaintiff recovered a judgment against the defendant and against his partner, one Stucken, in the United States Circuit Court for the alleged conversion of three ships belonging in part to the plaintiff. Pending an appeal taken by the defendant to the Supreme Court of the United States he made a general assignment, giving all his other creditors a preference over the plaintiff. Thereafter the plaintiff brought an action to set aside the assignment as fraudulent. Subsequently a settlement was made, the plaintiff receiving some $90,000 in cash and a note of the defendant for $28,700, and satisfying his judgment for $243,204.42 against the defendant and assigning the one recovered against Stucken. Subsequently the note for $28,700 was surrendered upon the payment by the defendant of $12,000. It appeared that after the assignment was made the attorney for the assignee, in preparing his answer to the action brought by the plaintiff to set it aside, discovered that the property assigned was more than sufficient to pay all the creditors of the defendant, including the plaintiff: that he so informed the defendant and advised him to try and settle the matter with the plaintiff, as otherwise the plaintiff might collect the amount of his judgment before the appeal could be heard in the Supreme Court, and that in pursuance of that advice the settlement was made.

*Held,* that the concealment of the fact of his solvency by the defendant in negotiating the settlement with the plaintiff did not authorize the latter to vacate the settlement upon subsequently discovering it, in the absence of proof showing that the defendant had made some misrepresentation as to his pecuniary condition, or that the plaintiff had put some question to him in regard thereto.

APPEAL from a judgment in favor of the defendant, recovered on a trial at Special Term.

*Wm. J. Gibson* and *S. P. Nash*, for the appellant.

*B. Roelker* and *Joseph H. Choate*, for the respondent.

Daniels, J.:

The action was brought by the testator himself, who departed this life after the trial had taken place. The object of it was to set aside the assignment of a decree against Edward Stucken, and a release and satisfaction of a judgment recovered by him against the defendant, and to recover the balance still remaining unpaid upon the judgment. The judgment was recovered upon a verdict in an action in the Circuit Court of the United States. It was entered on the 20th of May, 1859, and then amounted to the sum of $243,204.42. The verdict in the action was recovered for the value of the plaintiff's interest in three ships, after deducting the amount of money advanced upon them, and for the payment of liens to which they had been subjected. The recovery proceeded upon the ground that the money advanced was a loan and not, as the formal transaction indicated it to be, the consideration for the absolute sale of the plaintiff's interest in the ships. The transaction through which the apparent title was transferred took place between the plaintiff and Edward Stucken, who at the time was in business as a copartner with the defendant Meyer. The latter was absent then from the United States, and the purchase of this interest in the ships seems to have been outside of the scope of the copartnership business. When Meyer returned to the United States information was given to him of the facts that this interest in the ships had been purchased by his partner, and an agreement had also been entered into, to again transfer it to the plaintiff, upon the payment of the consideration mentioned in the sale, and an additional sum of about $25,000, and that was approved by the defendant Meyer. The ships were not transferred by the firm to the plaintiff, neither did he pay to Stucken or Meyer the amount of money for which it was agreed the transfer to him should be made, and they accordingly sold the ships to other parties; and an action was brought by the plaintiff against Meyer to recover their value. It proceeded upon the allegation that no sale was in fact intended or made to Meyer and Stucken, but that the plaintiff borrowed $100,000 of them, and that his interest in the ships was to be reconveyed to him

upon the repayment of the amount with a usurious rate of interest. And upon the trial in the United States Circuit Court it was held by Mr. Justice NELSON, that Meyer was liable for the conversion of the ships, although he was not informed that a loan was contemplated or intended, or that a usurious rate of interest had been agreed upon, inasmuch as he had approved of and ratified the purchase of the ships and the agreement for their reconveyance to the plaintiff, as that appeared by the papers which had been executed. This ruling was resisted by the counsel of Meyer upon the trial, and a bill of exceptions was proposed and served for the purpose of reviewing it, together with other rulings deemed to be objectionable, upon a writ of error to the Supreme Court of the United States. Amendments were proposed to the bill, and they were brought before Mr. Justice NELSON for settlement, but their settlement was not completed on account of his inability to give them that attention at the time which was required for that purpose, and the further settlement of the bill was deferred until the counsel could appear before him in the city of Washington for its completion. Meyer's circumstances were such that bail could not be obtained by him to stay the plaintiff's proceedings upon the verdict and the judgment, and immediately after the recovery of the verdict he made a general assignment for the benefit of his creditors to George W. Hennings and George Mosle, in which he preferred all his other creditors, leaving the surplus or residue of his property only, subject to the payment of the plaintiff's judgment. After the issuing and return unsatisfied of an execution upon the judgment, the plaintiff commenced a creditor's suit to set aside the assignment as fraudulent, and to secure out of the assigned property, and other property alleged to belong to the defendant, the payment of his judgment. This action was resisted by the assignees in the assignment, and while the litigation stood in this condition an effort was set on foot to settle with the plaintiff and obtain a satisfaction of his judgment against the defendant Meyer, and an assignment of the decree which, for the same cause of action, had been recovered against his copartner Stucken on the 21st of November, 1859, for the sum of $250,369.70. The negotiations which took place to accomplish this object resulted in an agreement by which the plaintiff was to receive in cash and notes the sum of $128,700. Of

this amount $45,000 were to be in good notes and $25,000 in a note or notes of Meyer himself, for which the judgment and decree were to stand in escrow as security, and $28,700 in the unsecured note of the defendant Meyer. The terms, however, were so far changed that the notes, with the exception of the one last mentioned, were dispensed with, and upon the allowance of a discount for the time it was agreed they should run, the money itself was paid to, or applied upon obligations entered into by the plaintiff, which were a lien upon the indebtedness. To extinguish such liens and. make other payments, the sum of $36,878.71 was appropriated and used, and the residue of the cash, after deducting the discount, and amounting to the sum of $60,971.29, was received by the plaintiff, and the note of $28,700, in the form which had been agreed upon, was also executed and delivered to him. The judgment recovered by him against Meyer was released, and also satisfied of record, and the decree recovered by him against Stucken was. assigned to Charles Luling and Charles G. H. Schloettner, one of whom was a relative by marriage and the other a friend of Meyer's, who, together, advanced the money used in carrying out the terms. of, and consummating, the settlement.

After this settlement was completed an adjustment was made of the assigned estate, which resulted in a surplus over and above the preferred indebtedness being returned to Meyer of between one hundred and forty and one hundred and fifty thousand dollars. In addition to that he received from his partner Stucken, as his proportion voluntarily paid of the expenditure made to obtain the settlement, the sum of about $55,000. And when knowledge of these facts was acquired by the plaintiff, and in the year 1866, he instituted this action to set aside the release and satisfaction of the judgment, and the assignment of the decree recovered against Stucken. His right to that relief was placed by his complaint upon two grounds, in support of which it was alleged by him that Meyer represented to him that he was unable out, of his estate to pay his indebtedness, and that his assets would not realize enough to pay twenty-five per cent upon the debts owing by him, and further that at the time the settlement itself took place, and afterwards. also, he agreed to pay the balance of the plaintiff's indebtedness whenever he should become able so to do. Upon these

allegations issue was taken by the defendant Meyer, who denied making either of the representations or promises relied upon in support of the action. It was also alleged that the same promise was renewed when the plaintiff surrendered the note of $28,700, which he did upon the payment to him of the sum of $12,000. This note entitled Meyer to a long period of time for the final payment of the indebtedness mentioned in it, and secured to him the privilege of taking it up within six months from its date by paying the sum of $14,350. And it was because of the reduction of that sum to $12,000, the amount actually paid by another person for the note, that one of the promises set forth was alleged to have been made. This, however, was denied by the defendant, and in support of the plaintiff's case, so far as it depended upon the alleged representations and promises, it rested upon the plaintiff's own evidence. It was met directly by the testimony of the defendant, who denied the making of these representations and promises, and also denied entering into any agreement himself personally with the plaintiff for the settlement of these demands. In these denials his evidence was materially sustained by that which was given by Charles F. Southmayd and James B. Bond, for in their testimony the fact was stated to be that the settlement itself was proposed by Southmayd on behalf of Meyer and negotiated by Bond acting in behalf of the plaintiff Graham, while he himself testified that the terms of the settlement were negotiated and agreed upon between himself personally and Meyer, and that all Southmayd and Bond had to do with it was to carry the agreement so made into effect. And the papers which were made between the parties also had a direct tendency to confirm the evidence of the defendant and his witnesses.

Upon this state of the evidence the judge presiding at the trial determined that the plaintiff had failed to prove the representations relied upon by him, or either of these promises to pay the residue of the debt when Meyer should become able to do so. And in the state of the proof which appears in and has been presented by the case, it must be concluded that the determination of the judge was the most consistent which could be made upon the evidence produced before him. He had the witnesses from whom it was obtained in his presence, observed their manner and demeanor, and

considered their statements, and there is nothing in the case which would warrant this court in holding that his conclusions upon this part of it were not entirely just and right.

But it has been further urged in support of the appeal, and mainly upon the evidence of Mr. Southmayd, that there was such a concealment of the financial condition of the defendant Meyer as rendered the settlement fraudulent and inoperative. The evidence given by him upon which this position has been taken was that he discovered in the examination of the facts of the case, which he made to prepare the answer drawn by him for the assignees in the suit of the plaintiff as a judgment creditor, that a large surplus would remain after the payment of the debts preferred by the assignment, and that this surplus in the hands of the assignees would be applicable to the plaintiff's judgment, and that it might be obtained and so applied before any writ of error upon the judgment recovered by the plaintiff could be brought to an argument in the Supreme Court of the United States, and accordingly that there was danger that the plaintiff would obtain this surplus, and not being himself financially solvent would be able to hold it against the judgment for restitution, even if the judgment recovered by him against the defendant should be reversed by the action of that tribunal. Because of this knowledge it was insisted that the settlement was inoperative and fraudulent, inasmuch as there was no disclosure of the fact that a large surplus would probably remain in the hands of the assignee after paying all the creditors preferred by the assignment. That the defendant himself had good reason to believe that there would be such a surplus is disclosed by the facts stated by him in his deposition, that his assigned estate amounted to about the sum of $404,000, while the debts owing by him, exclusive of the plaintiff's demand, amounted to the sum of between two hundred and forty and two hundred and fifty thousand dollars, which would indicate a surplus still larger than that obtained after the adjustment of the preferred debts and the closing of the trusts vested in the assignees. It must therefore be assumed that both the defendant himself and Mr. Southmayd, without knowing precisely what the surplus would be, had good reason to believe, and did believe, that a large surplus would remain in the hands of the assignees subject to the plaintiff's demand, if the settlement proposed did nc

take place. In making it, a basis of about fifty cents on the dollar of the plaintiff's judgment was adopted, and that left in the defendant's hands, after repaying the amount advanced to carry the settlement into effect by Luling and Schloettner, between thirty and forty thousand dollars.

The complaint was not framed in such a manner as to allege the concealment of these facts as a ground of relief in the action, but as it did aver representations stating the defendant's actual insolvency when the facts were affirmed to be otherwise, proof of this surplus, and of knowledge of its existence, was not deemed by the judge to be inappropriate to the issue, and as the proof was supplied by the defense itself, it was urged upon the consideration of the court as a special ground of relief made to appear by the defendant upon the trial of the action; but in the disposition which was made of the case, as no representation was found to have been made concerning the defendant's financial condition, it was considered that the action could not be maintained upon this ground alone.

As the settlement appears by the testimony both of Bond, Southmayd and Meyer to have been made and consummated, no questions were asked and no intimation whatever was given concerning the financial condition of the defendant, but it proceeded wholly and exclusively upon the fact that the plaintiff had recovered this judgment and decree, and had a creditor's suit pending against the defendant and his assignees, while the defendant himself was continuing the contest as to his liability to the plaintiff upon the facts made to appear on the trial of the action in the United States Circuit Court. The decree against Stucken was not the subject of contest, and these facts were all well known not only to each of the parties, but also to the other persons who were engaged in endeavoring to bring about the compromise. For that purpose a proposition was first made at the instance of Mr. Southmayd himself, and that resulted in opening negotiations which finally ended in the adoption of mutual terms of settlement. Each party acted upon the knowledge and information which he had, without, as the case has been established, endeavoring to obtain any information whatever from the other. It was upon the basis that Graham had this judgment and decree and was prosecuting his creditor's suit that he through Bond carried on the negotiation, and it was upon the knowledge

acquired by Southmayd from his investigations of the affairs of the assigned estate, and of Meyer from the condition of his circumstances at the time when the assignment was made, that the negotiation on his behalf was carried on. Neither party attempted to extend his sphere of knowledge or information by interrogating the other party, but each appeared to be satisfied to proceed upon what he himself knew concerning the case, and as this was a negotiation for a settlement between contending parties, and no questions were asked, or information sought, by one from the other, there seems to be no legal principle upon which the defendant can be held liable for omitting, voluntarily by himself, or by his counsel, to disclose the facts known to either, as to the favorable condition of the assigned estate. No artifice or device whatsoever was resorted to for the purpose of creating any wrong impression in the mind either of the plaintiff or of Bond, who represented him, neither was anything done or said which would have the effect of diverting attention from the probable condition of this estate, but each person assumed to act upon what he himself knew concerning these differences, and upon that basis entered into and completed the terms of this settlement. Upon these facts it cannot be inferred that any intention existed to deceive either the plaintiff, or Bond, who acted for him, but there was simply the design to volunteer no information possessed either by Mr. Southmayd or Meyer upon this subject, and that, under the circumstances appearing in this case, would not warrant the conclusion that any fraudulent concealment intervened upon which the terms of this settlement could be set aside by the court. The facts themselves were extrinsic of the transaction between these parties, and within the judgment of the court in *Laidlaw* v. *Organ* (2 Wheat., 178) were not required to be disclosed either to the plaintiff or his agent. That was a case where the defendant had acquired information of circumstances which might influence the price of the commodity sold, and were not known to the plaintiffs, but the court held that withholding the information was not sufficient to entitle the plaintiffs to annul the sale. A point quite similar to that now being considered arose in *Shank* v. *Shoemaker* (18 N. Y., 489), where a settlement was sustained which took place after the repeal of the statute upon which the right of action depended, and which fact was known to the

plaintiffs, and not communicated to the defendant although he had acquired no knowledge on the subject. *Grover* v. *Wakeman* (11 Wend., 187) contained no intimation which in any manner can be deemed to be adverse to this conclusion, for what was there said related to parties sustaining an altogether different relation from that existing between these individuals. This particular point was also considered by this court in the case of *Dambmann* v. *Schulting* (12 Hun, 1), but there was the essential difference between that case and this one, that there the debtor had made a representation concerning his pecuniary condition to the creditor, which he discovered to be untruthful by reason of facts afterwards occurring and which became known to him before he obtained the release whose validity was in controversy. The plaintiff accordingly acted under a false conviction as to the facts, which had been produced by the defendant himself, and which, from the knowledge acquired from circumstances subsequently occurring, he understood to be untruthful. It was therefore deemed to be unconscionable and fraudulent for him still to take advantage of the belief caused by his representations which, at the time they were acted upon, he knew were unfounded. But in that case, for reasons not now requiring special consideration, the judgment was reversed by the Court of Appeals (75 N. Y., 55), and a new trial ordered, and the defendant was subsequently altogether exonerated from liability. (*Dambmann* v. *Schulting*, 85 N. Y., 622.)

This decision has an exceedingly important bearing upon the disposition of this part of the present appeal, for it was distinctly held by the court that the debtor was under no legal obligation voluntarily to disclose his financial situation to the creditor, to render a settlement or compromise of their affairs operative and binding. That was precisely this case, and the decision for that reason seems to be controlling over this controversy. The inclination of courts of justice has been to maintain settlements of disputed rights when they have been fairly entered into, and when no artifice, deception or fraud has been practised by the debtor upon his creditor, or any person acting in his behalf. (*Adams* v. *Sage*, 28 N. Y., 103, and other authorities maintaining the same point will be found in *Erie R. R. Co.* v. *Vanderbilt*, 5 Hun, 123, 139–140.) In defining this rule the courts have guarded themselves against

material defects in an article which may be the subject of a sale. There the concealment intentionally made of facts essential to be known to the opposite party, will avoid the transaction. Such were the cases of *Brown* v. *Montgomery* (20 N. Y., 287), and *Fleming* v. *Slocum* (18 Johns., 404). But that class of cases have no bearing or effect upon the transaction now under consideration.

As no artifice whatever was made use of to withhold this information from the plaintiff, or the person acting for him, and no request was made for a disclosure of the defendant's condition, but the parties each undertook to act independently upon the facts known to himself, and proceeded in that manner to compromise the plaintiff's judgment and decree, he was not entitled to set aside or vacate the settlement made because it turned out as a matter of fact that the defendant was in a much better situation financially than the plaintiff supposed him to be.

There was no evidence given upon the trial in any manner tending to establish the fact that the assignees under the defendant's assignment were parties to this negotiation or settlement. It is true that Mr. Southmayd was at that time their attorney and counsel, but he neither acted nor professed to act in bringing about or completing the settlement in their behalf. That was wholly proposed, according to his own uncontradicted testimony, on behalf of the defendant Meyer himself, and after it was brought about, then information of it for the first time was given to the assignees, and upon the basis of the plaintiff's demand having been withdrawn from the effect of the assignment, the adjustment of the assigned estate was made, and the residue of the property surrendered up to the defendant. There was no fact or circumstance, therefore, in the case upon which it could be held that the assignees themselves had failed to make disclosures which they, in the discharge of their duties, would be required to make to a party beneficially interested in the maintenance and execution of their trusts.

The circumstances that Meyer stated to Graham in the preceding interview had between themselves, that he could find friends to enable him to carry out his offer of twenty-five per cent, will not aid the plaintiff's action, for as a matter of fact it appeared upon the trial that he was dependent upon the assistance of his friends to carry out and complete the compromise as he did. The surplus in

the hands of the assignees was not available for that purpose. It was subject to the assignment while that instrument remained in force, and could not be liberated as it was not until the plaintiff's claims should be entirely relinquished. Up to that time the surplus could be made of no advantage or benefit to the defendant, by the way of performing any offer made by him to the plaintiff for the settlement of their controversy. What he said was truthful therefore, and it appeared as a matter of fact that he was dependent upon the interposition and assistance of friends for the money or notes required to carry the terms of the compromise into effect.

The rulings of the court by which the pleadings, bill of exceptions, and other proceedings in the litigation were received in evidence, violated no principle of law. These documents were important by way of information in the action, affording the court the means of discovering the precise situation of these parties at the time when their settlement took place. They were circumstances having a bearing upon and indicating the motives which might be assumed, in some measure certainly, to induce the plaintiff's action, and as they were pertinent to that purpose the court was justified in receiving them, so that the court itself could be placed in the situation of these parties at the time when this negotiation was commenced and carried into effect. No other points arise upon the appeal, which it is important to consider for the disposition of the case. They were all disposed of at the trial as the evidence justified the court in determining them, and the judgment from which the appeal has been taken should be affirmed, with costs.

BRADY, J., concurred; DAVIS, P. J., concurred in the result.

Judgment affirmed, with costs.