JOHN McDONOUGH AND OTHERS, RESPONDENTS, *v.* MYRON J. DILLINGHAM, APPELLANT.

*Pleadings — rules for determining, when an action is to be held as brought on contract and not in tort — when a partial performance of an agreement to compromise a debt will not relieve a defendant from liability for a fraud perpetrated in contracting it.*

Where the allegations of the complaint are such as make it doubtful whether the cause of action therein alleged is on contract or in tort, every intendment is to be made in favor of construing it as being an action on contract.

In all cases where the pleader avers the sale and delivery of property to the defendant at a fixed and agreed price, which remains unpaid, and also alleges, that he perpetrated a fraud in making the purchase, by means of false representations as to his solvency, and a question of doubt is presented as to whether it was the intention of the pleader to set forth a cause of action *ex contractu* or *ex delicto*, the omission to allege that damages have accrued to the plaintiff by reason of the fraud is accepted by the court as a circumstance indicating the purpose of the pleader to rely upon the contract as constituting the cause of action

Since the amendment of section 549 of the Code of Civil Procedure, made in 1879, allegations of fraud on the part of the defendant, in making the contract declared upon, are pertinent and material, and cannot be treated as mere surplusage.

Upon the trial of this action, brought to recover the damages sustained by the plaintiffs by reason of the failure of the defendant to pay a note and check given by him upon the purchase of cattle, evidence was given tending to show that after the maturity of the note and check the defendant and one of the plaintiffs had some negotiations relative to the indebtedness, in which the plaintiffs accused him of perpetrating a fraud in making the purchase, by fraudulently misrepresenting his pecuniary condition, which accusation was denied by the defendant, though he admitted that he had sought to compromise the debt on account of his insolvency. After propositions suggested by the defendant had been rejected by the plaintiffs, one suggested by the latter was accepted by the defendant, by which the plaintiffs agreed that if he would pay $500 in cash and $1,000 as soon as he could earn it, or would secure its payment to their satisfaction, they would accept it in payment of the debt. The $500 was paid to and applied by the plaintiffs upon the note and check, but neither was given up, nor was any release executed by the plaintiffs; nor was $1,000 paid or secured to be paid.

The defendant's counsel, who claimed that the plaintiffs had condoned the fraud requested the court to charge the jury that if they believed that there was an agreement made between the plaintiffs and defendant, by which the plaintiffs agreed, after they knew all the facts (assuming fraud to have been committed

by the defendant on the purchase), to compromise or settle the transaction, and such an agreement was partly carried out, then thereby the plaintiffs waived any fraud so committed, and could not recover.

*Held,* that the court did not err in refusing so to charge.

Appeal from a judgment entered upon a verdict rendered at the Erie County Circuit, and from an order denying the defendant's motion for a new trial founded upon the judge's minutes.

The plaintiffs, in July, 1883, sold and delivered to the defendant two car loads of cattle at the fixed and agreed price of $3,207.60; the defendant thereupon made and delivered his negotiable promissory note for that sum, payable twenty days after date, with use. On the 17th day of July, 1883, the defendant purchased of Uhlman & Block one car load of cattle at the agreed price of $1,295.27, and thereupon the defendant delivered to them his check for that sum, payable on the twenty-ninth of July. Before the commencement of this action Uhlman & Block sold and transferred all their right of action growing out of the transaction to the plaintiffs herein. On the trial the question was presented, whether the causes of action set out in the complaint were upon these contracts, or were for a tort for an alleged fraud in making the purchase. The cause of action arising out of the sale by the plaintiffs to the defendant is first set out in the complaint. The first allegation is in a paragraph marked number two and is as follows: " The plaintiffs further allege that on or about the second day of July, 1883, the plaintiffs sold and delivered to defendant two car loads of cattle, at said city of Buffalo, for the agreed price of $3,207.60, which sum was the value of the said two car loads of cattle. That such sale was made to the defendant upon credit, and was evidenced by a promissory note of which the following is a copy," the note is then set out in full. In succeeding paragraphs, numbered 3, 4, 5 and 6, it is alleged in substance, that, to induce the plaintiffs to give such credit and take such promissory note, the defendant stated and represented to the plaintiffs, that he was perfectly good and responsible; that he was worth, in his own right, twenty such car loads of cattle, and that he did not intend to sell the cattle immediately, but intended to keep them in pasture on his own farm and await a better market, and that he had other cattle on his farm; and for those reasons he wanted credit, and that he was perfectly good and responsible.

Then follows the other allegations, stating that the plaintiffs relied upon such representations and believed them to be true, and was induced thereby to give credit to the defendant. And, further, that the defendant was insolvent; and that such allegations were false and untrue, and were made with the intent and purpose of cheating and defrauding the plaintiffs; that the note remained unpaid, excepting a small sum, which was stated, and that the plaintiffs had sustained great damage by reason of the premises.

The cause of action arising out of the sale of the other car load is charged in the second count as follows: "The plaintiffs further allege that on the 17th day of July, 1883, Uhlman & Block sold to the defendant one car load of cattle for the agreed price of ........ dollars, and that the said firm of Uhlman & Block accepted from the defendant a check, of which the following is a copy, on account of the purchase-price of said cattle to wit:" Here follows a copy of the check. The allegations as to fraud are substantially the same as those contained in the first count.

The prayer for judgment is as follows: "Wherefore the plaintiffs demand judgment against the defendant for the sum of $3,207.60, with interest thereon from the 2d of July, 1883, and the further sum of $1,295.27, with interest thereon from the 17th day of July, 1883, less the sum of $500, paid on or about the fifteenth day of October, together with the costs of this action."

The defendant, in his answer, admitted the making of the purchase of the cattle, and the giving of his notes and checks as alleged in the complaint, and admits that neither of them had been paid. He also denies the allegations of fraud, and claims that if any fraud had been practiced, as alleged, the same has been condoned and waived.

The verdict was for the sum demanded in the complaint.

*John Gillette,* for the appellant.

*Charles A. Forsyth* for the respondents.

Barker, J.:

The defendant insisted upon the trial that the cause of action averred in the complaint was founded upon contract. We concur in this construction of the complaint. The further averments

therein, that the defendant, for the purpose of inducing the plaintiff to give credit on sale of the cattle, made false and fraudulent representations as to his financial condition and solvency, which induced the plaintiff to deliver the cattle without payment, do not make the action one *ex delicto*. The rule of pleading established by the Code requires the complaint to contain a plain and concise statement of the facts constituting the plaintiff's cause of action, and a demand for such judgment as the plaintiff supposes himself entitled to on the facts set forth therein. Nothing more is necessary in any case. The pleader is not required to state, either in the summons or the complaint, the class of action to which he conceives his cause of action belongs, as the same are denominated in judicial procedure. If the complaint states facts entitling the plaintiff to any relief whatever, then it is for the court to determine, when the question is properly presented, whether the cause of action averred is founded in contract or tort. The character of the cause of action must, in all cases, be determined by an analysis of the averments in the complaint, together with the nature of the relief demanded. (*Conaughty* v. *Nichols*, 42 N. Y., 83; *Ledwich* v. *McKim*, 53 id., 307, 315; *Neftel* v. *Lightstone*, 77 id., 96; *Elwood* v. *Gardner*, 45 id., 349.)

If the cause of action as set forth is doubtful or ambiguous, every intendment is in favor of construing it in the nature of an action *ex contractu*. (*Goodwin* v. *Griffis*, 88 N. Y., 629.) If all the allegations relative to the defendant's misrepresentations as to his pecuniary condition, and his fraudulent intent in making them, were struck out of the complaint, a cause of action founded on the defendant's promises, as set forth therein, would remain, concisely and clearly stated, showing a cause of action founded on contract. The averments set forth in the second count clearly constitute a cause of action on contract within the rule of construction adopted by the courts for the purpose of ascertaining whether the same is one in contract or tort. It will be observed there is no averment that Uhlman & Block suffered any damages in consequence of the fraud alleged to have been perpetrated on them by the defendant. In all cases where the pleader avers the sale and delivery of property to the defendant at a fixed and agreed price, which remains unpaid, and also alleges he perpetrated a fraud in making the pur-

chase, by means of false representations as to his solvency, and a question of doubt is presented as to whether it was the intention of the pleader to set forth a cause of action *ex contractu* or *ex delicto*, the omission to allege that damages have accrued to the plaintiff by reason of the fraud is accepted by the court as a circumstance indicating the purpose of the pleader to rely upon the contract as constituting the cause of action.

Since the amendment of section 549 of the Code, made in the year 1879, averments of fraud on the part of the defendant in making the contract declared upon are pertinent and material, and cannot be treated as mere surplusage. If the fraud is admitted by the defendant, or is sustained by proof when denied, the plaintiff is entitled to a body execution against the defendant on the judgment. The question of fraud, when the cause of action is on contract, is collateral thereto, and presents a separate and distinct issue, which must be tried and determined with the issues presented on the question of the defendant's liability on the contract.

Section 549 now provides that the defendant may be arrested "in an action upon contract, express or implied, other than a promise to marry, where it is alleged in the complaint that the defendant was guilty of a fraud in contracting or incurring the liability. Where such an allegation is made, the plaintiff cannot recover unless he proves the fraud; and a judgment for the defendant is not a bar to a new action to recover upon the contract only." Section 550 enumerates the cases in which the right to arrest depends upon matters extrinsic of the cause of action, and in which no execution against the person can issue, unless an order of arrest has been granted and executed before judgment. These extrinsic matters need not be alleged in the complaint, and if alleged are immaterial to the right of action and need not be proved upon the trial. (*Segelken* v. *Meyer*, 94 N. Y., 485; Code of Civil Pro., § 1487; *Smith* v. *Duffy*, 37 Hun, 506; *Hall* v. *Conger*, 1 How. Pr. [N. S.], 88.)

The allegation of fraud brought the case within the class of cases mentioned in subdivision 4 of section 549, which would entitle the plaintiff to a body execution on the judgment in case the charge of fraud was sustained by the proofs presented on the trial. The defendant admitted his liability on the contracts, and, as the

judgment is not in excess of his indebtedness thereon, the judgment should be sustained, unless some error occurred on the trial relative to the issue of fraud. The defendant's evidence tended to prove that, after the maturity of the note and check, he and one of the plaintiffs had some negotiations relative to the matter of his indebtedness, in which the plaintiffs accused him of perpetrating a fraud in making the purchase, by fraudulently representing his pecuniary condition. This accusation the defendant denied, but, at the same time, sought to compromise the debt on account of his insolvency. Several propositions were made by the defendant as the basis of the compromise, but none of them were satisfactory and were rejected. The plaintiffs then made the defendant a verbal proposition in substance, viz., that if he would pay them $1,500 — $500 in cash and $1,000 as soon as he could earn the same or secure that amount to their satisfaction — they would accept it in payment of the debts. This proposition the defendant assented to and paid the $500, which the plaintiffs indorsed upon the notes and checks in *pro rata* proportions. No other negotiations were had between the parties, and at the time of the commencement of this suit the $1,000 had not been paid or secured to be paid. Neither the note or check was given up, nor was a release in any form executed by the plaintiffs. At the time of the conversation relative to the proposed compromise, the plaintiffs were informed as to the financial ability of the defendant at the time he purchased the cattle. This was the only evidence presented by the defendant in support of the defense that the plaintiffs had condoned the fraud.

Upon this question the court was asked to charge the jury that if they believed that there was an agreement made between the plaintiffs and defendant, by which the plaintiffs agreed, after they knew all the facts (assuming fraud to have been committed by the defendant on the purchase), to compromise or settle the transaction, and such an agreement was partly carried out, then, thereby, the plaintiff waived any fraud so committed and the plaintiffs cannot recover. This was refused, and the defendant excepted.

We are of the opinion that there was no error in rejecting the proposition. The general rule on that subject undoubtedly is, that where a defrauded party, with full knowledge of the fraud, settles the matter in relation to which such fraud has been committed, and

releases the person who defrauded him, he thereafter has no claim for relief, either at law or in equity, on account of such fraud. Or if the defrauded party, after such knowledge, subsequently confirms the original contract by making new agreements respecting it, he thereby condones the fraud and cannot pursue the wrong-doer. But we think that the facts which the defendant's evidence tended to prove, were insufficient to make a case which falls within either of the rules stated. The plaintiffs promise to accept a lesser amount than was due them upon the original indebtedness was wholly executory and was not an accord and satisfaction of the defendant's obligation. There was no new agreement made which superseded, changed or altered the terms of the original contract. The payment which the defendant made had the effect to reduce the damages which the plaintiffs sustained by reason of the defendant's fraud, but there was no new agreement made which would merge the fraud in a new obligation on the defendant's part. The money which he paid was but a part performance of the original undertaking, and it did not increase, alter or change the nature of the original transaction. We have examined the many cases cited by the learned counsel for the defendant in support of his argument, and fail to discover that they support his contention that the terms of the compromise relieved the defendant from liability to arrest on a body execution issued upon the judgment.

In *Baker* v. *Spencer* (47 N. Y., 562), the plaintiff had given the defendant a $500 note, and subsequently he suspected that he had been defrauded by the defendant, and refused to pay the same. Suit was brought thereon against the defendant and a judgment recovered, which was compromised by his giving a new note for $300, which he paid. The defendant afterwards ascertained, that he had been defrauded in the original transaction, and brought an action to recover the moneys paid upon the last named note and had judgment for the sum paid thereon. The court held, that if the plaintiff had knowledge of the facts constituting the fraud when he compromised the judgment rendered against himself it would have been a condonation of the alleged fraud, as it would have been merged in the new note. That case cannot, therefore, be brought within the principle of the rule upon which the defense of condonation is based, for the reason that the new note was then received

as an accord and satisfaction of the prior liability existing against the defrauded party.

In *Obregon* v. *De Mier* (54 How., 390), the defendant had American gold in his hands belonging to the plaintiff for the purpose of making a purchase of silver coin. Subsequently, and before any purchase was made, the plaintiff countermanded the order and drew a draft upon the defendant at sixty days, which was accepted, and it was held that by drawing the draft the plaintiff had elected to treat the defendant as an ordinary debtor, and the fiduciary relation was ended. There are many other cases of the same import.

In *Nelson* v. *Blanchfield* (54 Barb., 630), the plaintiff, after the perpetration of the alleged fraud, and with knowledge thereof, settled wtth the defendant and compromised the transaction by accepting the defendant's note for a portion of the damages and a due bill for 200 shares of the capital stock in a corporation, and the absolute transfer of other shares in the same company, and it was held that it was a condonation of the tort and a waiver of the plaintiff's right to arrest.

In *Adams* v. *Sage* (28 N. Y., 103), the parties were in controversy as to their rights, growing out of a transaction between themselves, and suits were pending in which the same matter was involved. Before trial they compromised their differences and executed releases to each other. In a subsequent action by one of the parties to set aside the release, it was held, as the complaining party had compromised and settled the original matter in dispute, with a full knowledge of the facts upon which the charge of fraud was based, he was not entitled to relief on the ground of the alleged fraud.

In these and the other cases cited by the learned counsel for the defendant, it will be found, on their examination, that the settlement and compromise entered into in each of the cases was based upon an agreement in the nature of an accord and satisfaction of an existing obligation and the substitution of new ones in lieu of the former ones, or that there was a formal release by the defrauded party of a previous legal obligation, with knowledge of the fraud charged. (*Parsons* v. *Hughes*, 9 Paige, 594; *Alliance Ins. Co.* v. *Cleveland*, 14 How., Pr., 408.)

The evidence produced by the plaintiffs, in support of the allegations of fraud, was of such a character as to make a case for the

consideration of the jury, and they were specifically instructed by the court that they could not find a verdict for the plaintiffs unless the charge of fraud was established to their satisfaction. As the cause of action was admitted, and the jury found that a fraud was perpetrated by the defendant in the purchase of the cattle, the plaintiffs made a case within the rule laid down in the fourth sub-division of section 549, and the judgment should be affirmed.

Smith, P. J., Haight and Bradley, JJ., concurred.

Judgment and order affirmed.